## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ALICE KINSLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  3:17-cv-01218-MHH** |
| | } | |
| **NANCY BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Alice Kinsley seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Kinsley's claims for disability insurance benefits and for supplemental security income. After careful review, the Court reverses the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Kinsley applied for disability insurance benefits and supplemental security income on June 9, 2015. (Doc. 7-3, p. 14; Doc. 7-5, pp. 30-31). Ms. Kinsley alleges that her disability began November 20, 2014. (Doc. 7-3, p. 14; Doc. 7-7, pp. 2-9). The Commissioner initially denied Ms. Kinsley's claims on

September 23, 2015, and Ms. Kinsley requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-3, p. 14; Doc. 7-6, pp. 8-14). The ALJ issued an unfavorable decision on June 15, 2016. (Doc. 7-3, pp. 11-23). On May 22, 2017, the Appeals Council declined Ms. Kinsley's request for review (Doc. 7-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g) and 1383(c).

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence

supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Kinsley has not engaged in substantial gainful activity since November 20, 2014, the alleged onset date. (Doc. 7-3, p. 16). The ALJ determined that Ms. Kinsley suffers from the severe impairment of degenerative disc disease of the lumbar spine. (Doc. 7-3, p. 16). The ALJ also determined that Ms. Kinsley has the following non-severe impairments: Crohn's disease, COPD, and anxiety. (Doc. 7-3, pp. 16-17). Based on a review of the medical evidence, the ALJ concluded that Ms. Kinsley does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 18).

In light of Ms. Kinsley's impairments, the ALJ evaluated Ms. Kinsley's residual functional capacity. The ALJ determined that Ms. Kinsley has the RFC to perform:

> less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs. She is limited to occupations which do not require climbing ropes, ladders or scaffolds. She must be afforded the option to sit and stand during the workday, one to two minutes every hour or so at the workstation. She should avoid exposure to dangerous, moving, unguarded machinery and exposure to unprotected heights.

(Doc. 7-3, p. 19).

Based on this RFC, the ALJ concluded that Ms. Kinsley is able to perform her past relevant work as a cashier. (Doc. 7-3, p. 23). Accordingly, the ALJ determined that Ms. Kinsley has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 23).

## IV. ANALYSIS

Ms. Kinsley argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly evaluate her complaints of pain consistent with the Eleventh Circuit Pain Standard. "To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If the ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson,* 284 F.3d at 1225; *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("While an adequate credibility

finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility and could return to her past work alone are not enough . . . .") (brackets and internal quotation marks omitted).

Ms. Kinsley testified at her hearing she can only stand for "20, 25 minutes at the most" due to her back pain.  (Doc. 7-3, p. 67).  She reported pain from sitting in a chair at the hearing, stating "it's killing me to sit still right here right now . . . ." (Doc. 7-3, p. 62).  Ms. Kinsley testified she is able to walk only 150 yards, the approximate distance from her apartment to the mailbox, before she has to stop because of pain.  (Doc. 7-3, p. 67).  Ms. Kinsley explained that after walking a short distance, "my back feels like it's going to break in half . . . it would feel better if it would."  (Doc. 7-3, p. 67).  Once, when she visited the emergency room, Ms. Kinsley, in tears, stated "I'm upset with the back pain and wish my spine would just break in half because maybe then I will get relief.  I just want my pain to end . . . ."  (Doc. 7-9, p. 70).  On the same occasion, Ms. Kinsley stated that the pain "feels like someone has the edge of a knife constantly running it down my spine."  (Doc. 7-9, p. 71).

Ms. Kinsley estimates that she spends "five to six hours" a day sitting in a recliner.  (Doc. 7-3, p. 68).  Ms. Kinsley testified she can "hardly sweep [her] floors" and depends on her youngest daughter to sweep, mop, dust the bedroom, and clean her laundry.  (Doc. 7-3, pp. 66, 69-70).  She reported spending much of

her time reading the Bible but claimed she must "start over a couple times" due to her back pain. (Doc. 7-3 p. 70).

The ALJ determined that Ms. Kinsley's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 7-3, p. 22). The ALJ found that Ms. Kinsley's subjective pain testimony was only partially credible based on the objective medical evidence, her sporadic treatment history, noncompliance with medication, and her daily activities. (Doc. 7-3, pp. 20-22). The Court examines each category of evidence in turn.

## Objective Medical Evidence

An ALJ may consider objective medical evidence when evaluating a claimant's subjective pain testimony. 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). However, an ALJ may not discredit a plaintiff's testimony as to the intensity or persistence of her pain and fatigue solely based on the lack of objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also Todd v. Heckler*, 736 F.2d 641,

642 (11th Cir. 1984) (explaining that pain alone may be disabling and that it is improper for an ALJ to require objective medical evidence to support a claim of disabling pain).

In the present case, the ALJ found Ms. Kinsley's description of severe back pain inconsistent with the objective medical evidence in the record. (Doc. 7-3, p. 20). In reaching this conclusion, the ALJ overlooked parts of Ms. Kinsley's medical record. An ALJ may not "pick and choose among a doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009).

The ALJ's description of a doctor's visit in November 2014 illustrates the ALJ's selective treatment of the objective medical evidence relating to Ms. Kinsley's impairments. That medical record reflects that after being treated with Ultram, Ms. Kinsley told her doctor that her condition was "better than it was." (Doc. 7-9, p. 12; *see* Doc. 7-3, p. 20). The ALJ found that such an improvement was "inconsistent with worsening of symptoms." (Doc. 7-3, p. 20). The ALJ did not acknowledge that the medical record for this appointment also contains a notation that Ms. Kinsley displayed "limited forward flexion, limited extension, and limited lateral rotation in the range of motion of her back" as well as pain accompanying each of these movements. (Doc. 7-9, p. 12). In addition, the ALJ did not mention that the record from a doctor's visit one month later contains a

note that Ms. Kinsley's condition "was now worse than it was." (Doc. 7-9, p. 7). The December 2014 record indicates that Tramadol only partially relieved Ms. Kinsley's symptoms. (Doc. 7-3, p. 20; Doc. 7-9, p. 7). The ALJ omitted the December 2014 record from her analysis, but included in her analysis a January 2015 record that indicates that Tramadol was effective in relieving Ms. Kinsley's symptoms. (Doc. 7-3, p. 20; Doc. 7-9, p. 3). This selective treatment of Ms. Kinsley's medical records is inconsistent with the governing legal standard. *See Robinson v. Colvin*, 2014 WL 2214294203, at \*5 (N.D. Ala. May 28, 2014) (finding it was unreasonable for an ALJ to focus on a "snapshot" of treatment notes that show improvements and ignore notes that show a recurrence of pain).

There are other examples. In her summary of Ms. Kinsley's examination by Ernest Mollohan, D.O., the ALJ noted Ms. Kinsley's lack of radicular pain as well as her ability get on and off the examination table without difficulty. (Doc. 7-3, p. 20; *see* Doc. 7-9, p. 49). But the ALJ did not mention that Ms. Kinsley's lumbar pain rendered her unable to walk more than 30 feet of the normal 120 feet used for gait analysis or the fact that Ms. Kinsley was "intermittently stretching her back muscles for comfort" throughout the examination. (Doc. 7-9, p. 49; *see also* Doc. 7-9, p. 50 (stating that Ms. Kinsley "was stretching the paraspinal muscles approximately every 5 minutes during exam process")). The ALJ did not acknowledge that Ms. Kinsley had palpable areas of pain, rated "10/10", when Dr.

Mollohan examined Ms. Kinsley's vertebrae and paraspinal musculature. (Doc. 7-9, p. 50). Moreover, the ALJ did not acknowledge Dr. Mollohan's overall conclusion that "[Ms. Kinsley's] clinical exam findings were consistent with her complaints" and that she "displayed a genuine, honest and motivated effort to perform all of the examination maneuvers." (Doc. 7-9, p. 49).

The ALJ's summaries of Ms. Kinsley's visits to the emergency room similarly omit key information. The ALJ accurately described Ms. Kinsley's December 23, 2015 visit to the emergency room, in which an injection of Toradol effectively reduced Ms. Kinsley's pain, but the ALJ did not mention that Toradol injections were less effective in relieving Ms. Kinsley's pain on two other occasions. (Doc. 7-3, p. 20; Doc. 7-9, p. 83).[1] When addressing Ms. Kinsley's January 12, 2016 visit to the emergency room, the ALJ noted that "[a]lthough [Ms. Kinsley] stated the pain had worsened in the last five months, there were no functional deficits described." (Doc. 7-3, p. 21). But the medical records from that date state: "range of motion limited in back." (Doc. 7-9, p. 71).

The ALJ minimized the significance of other medical evidence. For example, the ALJ reported that an MRI of Ms. Kinsley's lumbar spine showed disc space narrowing but no evidence of a significant disc bulge. (Doc. 7-3, p. 21).

_____

[1] While the Toradol injection on December 23, 2015 reduced Ms. Kinsley's pain from an eight to a three on a 10 point pain scale, a Toradol injection on December 15 merely reduced her pain from a 10 to a five, and a Toradol injection on January 12, 2016 reduced her pain from a 10 to an eight. (Doc. 7-9, pp. 72, 77, 83).

The record of the MRI states that there was "quite severe disc space narrowing" at the L5-S1 disc level. (Doc. 7-10, p. 14). Similarly, the ALJ acknowledged Ms. Kinsley's x-ray showing moderate osteoarthritis of the lumbar spine and mild degenerative disease. (Doc. 7-3, p. 20). But in the administrative hearing, the ALJ dismissed the x-ray, stating "I mean, everybody's got that." (Doc. 7-3, p. 66).

The record indicates that the ALJ did not consider all of Ms. Kinsley's medical records when reaching her decision, and she minimized the objective evidence in the medical record that supports Ms. Kinsley's description of severe back pain. In doing so, the ALJ did not follow the legal standard for evaluating objective medical evidence. S*ee Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990) ("In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision.") (quoting *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (internal marks omitted)); *Pritchett v. Barnhart*, 288 F. Supp. 2d 1224, 1241 (N.D. Ala. 2003) ("the reasons articulated for rejecting the plaintiffs allegations about symptoms . . . are not in fact supported by substantial evidence. This becomes even more apparent when evidence not discussed by the ALJ in his decision is considered."). Because the ALJ failed to account for medical evidence that could reasonably be expected to produce the pain that Ms. Kinsley described, the Court cannot determine whether substantial evidence supports the ALJ's

conclusions.  On remand, the ALJ must account for all of the objective medical evidence in the record.

## Noncompliance with Medication and Sporadic Treatment

The ALJ discredited Ms. Kinsley's testimony about her symptoms in part because the ALJ found that Ms. Kinsley did not comply with her prescriptions and she sought treatment sporadically.  (Doc. 7-3, p. 21).  The ALJ reasoned that Ms. Kinsley's failure to seek treatment from a free clinic indicated that her symptoms were not as severe as Ms. Kinsley described.  (Doc. 7-3, p. 21).  But, at the administrative hearing, the ALJ did not ask why Ms. Kinsley did not seek treatment from a free clinic.  SSR 16-3p provides that:

> [w]e will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3P, 2016 WL 1119029, at *9.  The ALJ should not have used Ms. Kinsley's failure to seek treatment from a free clinic as a basis for evaluating the credibility of her statements about the severity of her pain without giving her the opportunity to explain why she did not pursue this option.

Additionally, it is well established that an ALJ must consider evidence showing that a claimant is unable to afford medical care before discounting her

credibility based upon her failure to pursue or comply with treatment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (recognizing prior holdings that poverty may excuse noncompliance); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("To a poor person, a medicine that he cannot afford to buy does not exist."); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 Fed. Appx. 483, 487 (11th Cir. 2012) (per curiam) ("[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment.").

Ms. Kinsley testified at her administrative hearing that she did not have insurance. (Doc. 7-3, p. 64). Ms. Kinsley's medical records from 2015 corroborate this testimony and contain a doctor's notation that she "lost [her] insurance." (Doc. 7-9, p. 85). Similarly, records from Ms. Kinsley's January 2016 visit to the emergency room contain a doctor's notation that Ms. Kinsley was "in tears" and stated that she "cannot afford her medicines." (Doc. 7-10, p. 11). Thus, even if Ms. Kinsley's prescribed treatment would restore her ability to work, her inability to afford the treatment would excuse noncompliance. *Dawkins*, 848 F.2d at 1213 ("[W]hile a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no

way to obtain it, the condition that is disabling in fact continues to be disabling in law.'") (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).[2]

The ALJ also failed to address evidence that Ms. Kinsley's prescribed Toradol was not always effective in alleviating her back pain and would not necessarily restore her ability to work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) ("The Commissioner may deny benefits for the failure to follow treatment when the claimant, without good reason, fails to follow a prescribed course of treatment that could restore the ability to work."); *Dawkins*, 848 F.2d at 1213 ("In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored."). The ALJ cited twice Ms. Kinsley's December 23, 2015 emergency room visit, during which Ms. Kinsley reported that after an injection of Toradol, her pain decreased from an eight to a three on a 10-point pain scale. (Doc. 7-3, pp. 20-21). But Ms. Kinsley's

---

[2] The ALJ questioned the credibility of Ms. Kinsley's claimed inability to afford treatment, noting that she "continued to purchase cigarettes." (Doc. 7-3, p. 21). But Ms. Kinsley testified that her daughter bought cigarettes for her; the ALJ found as much elsewhere, stating "smokes four cigarettes per day that her daughter buys for her." (Doc. 7-3, p. 19). At the administrative hearing, the ALJ specifically asked Ms. Kinsley: "[W]ho's paying for [your cigarettes]?" (Doc. 7-3, p. 65). Ms. Kinsley replied: "My daughter buys them for me." (Doc. 7-3, p. 65).

The ALJ also appears to suggest that Ms. Kinsley's continued smoking, in spite of her COPD, undermines her credibility, but the ALJ does not credit Ms. Kinsley's efforts to stop smoking. (Doc. 7-3, pp. 19, 65). The burden is on the Commissioner to produce evidence of unjustified noncompliance, and "[i]f the plaintiff was unable to stop smoking because she was addicted to nicotine, her noncompliance would not be unjustified." *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1251 (N.D. Ala. 2004).

medical records state her pain was "moderate" on that occasion. (Doc. 7-9, p. 79). In contrast, during Ms. Kinsley's January 12, 2016 visit to the emergency room, an injection of Toradol only reduced her pain from a 10 to an eight on a 10-point scale. (Doc. 7-9, p. 72). Therefore, apart from Ms. Kinsley's inability to afford her prescribed treatment, evidence from the record calls into question the extent to which her prescribed treatment would restore her ability to work. *See Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1219 (N.D. Ala. 2004) ("[T]he mere possibility of treatment that would improve the plaintiff's condition is not sufficient to support a denial of benefits. Should treatment in fact restore the plaintiff's ability to work, her benefits might be terminated under the appropriate legal standards.").

The ALJ also failed to consider Ms. Kinsley's longitudinal treatment history when characterizing her treatment as sporadic. (Doc. 7-3, p. 21); *see* SSR 16-3p, 2016 WL 1119029, at *8 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."). While Ms. Kinsley alleges disability beginning November 20, 2014, her treatment records indicate that her chronic back condition has been "present for many years," and necessitated treatment preceding the earliest appointment included in the record. (Doc. 7-9, p. 20). Additionally, between 2014

and 2016, Ms. Kinsley took Diclofenac, Fosamax, Gabapentin, Tramadol, Norco, and Toradol to treat her back pain. (Doc. 7-9, pp. 2-26, 83; Doc. 7-10, pp. 2-12). Between 2015 and 2016, Ms. Kinsley sought emergency treatment for her back pain on three occasions. (Doc. 7-9, pp. 76, 82; Doc. 7-10, p. 11). Between 2014 and 2016, Ms. Kinsley's medical records show she discussed her back pain with her doctor on numerous occasions. (Doc. 7-3, pp. 34, 38; Doc. 7-4, pp. 12, 17; Doc. 7-9, pp. 3, 7, 12, 16, 20).

The Eleventh Circuit has recognized that a claimant's credibility is bolstered by evidence showing numerous doctor visits and medications prescribed. *Somogy v. Comm'r of Soc. Sec.*, 366 Fed. Appx. 56, 64-65 (11th Cir. 2010) (finding that ALJ was wrong to discredit the claimant's testimony when she consistently reported her symptoms and physicians consistently credited her condition); *see Grier v Colvin*, 117 F. Supp. 3d 1335, 1351 (N.D. Ala. 2015) (holding an ALJ improperly discounted plaintiff's treatment for degenerative disc disease as "routine and conservative" when plaintiff sought treatment twice in 2009, reported worsening symptoms in 2010, received a diagnosis in 2012, and received steroid injections that failed to relieve her pain). Because Ms. Kinsley has consistently sought medical treatment for her back pain and her physicians have consistently credited her condition, the ALJ's characterization of her treatment as sporadic and inconsistent is not supported by substantial evidence.

## Daily Activities

In assessing Ms. Kinsley's subjective pain testimony, the ALJ evaluated Ms. Kinsley's daily activities. (Doc. 7-3, p. 21). This is a proper subject for consideration. *See* 20 C.F.R. § 404.1529(c)(3) (listing "daily activities" as a relevant factor to consider in evaluating a claimant's subjective pain testimony). The ALJ found Ms. Kinsley's reported daily activities inconsistent with her claimed level of pain. (Doc. 7-3, p. 22). In particular, the ALJ cited Ms. Kinsley's acts of picking up trash in her apartment, taking care of two dogs, preparing meals, sweeping once a week, mopping once a month, driving a car, occasionally attending church, coloring, working puzzles, reading the Bible, and knitting as inconsistent with her alleged level of pain. (Doc. 7-3, p. 22).

When examining daily activities, an ALJ must consider the record as a whole. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (finding that substantial evidence did not support the Appeals Council's finding that the claimant's "daily activities and her ability to care for her personal needs have not been significantly affected" because the Appeals Council "ignored other evidence that her daily activities have been significant affected"). The Eleventh Circuit has recognized that "participation in everyday activities of short duration" will not preclude a claimant from proving disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Instead, "[i]t is the ability to engage in gainful employment

that is the key, not whether a Plaintiff can perform chores or drive short distances."
*Early v. Astrue*, 481 F. Supp. 2d 1233, 1239 (N.D. Ala. 2007). Moreover, an ALJ
cannot discredit a claimant's description of limited daily activities merely because
those limitations cannot be objectively verified. *See Grier*, 117 F. Supp. 2d at
1353.

Here, the ALJ's review of Ms. Kinsley's daily activities omits the limitations
she described elsewhere in the record. While Ms. Kinsley does "try to . . . pick up
trash" around her apartment, she reports that she does so with a trash "pincher."
(Doc. 7-8, p. 25). Similarly, Ms. Kinsley acknowledged that she takes her dogs
outside and feeds them but depends on her daughter to bathe them and buy their
food. (Doc. 7-8, p. 26). Although Ms. Kinsley indicated that she sometimes fixes
sandwiches and frozen dinners for herself, she also reported that she sometimes
manages to prepare only one meal a day and on other occasions "can't do anything
but put some chips in [a bowl]." (Doc. 7-8, p. 27).[3] Ms. Kinsley additionally
reported she prepares whatever is quickest and easiest because she cannot stand for
long because of her back pain. (Doc. 7-8, p. 27).

Likewise, Ms. Kinsley's weekly sweeping takes her approximately two or
three hours because she has to take breaks to rest her back. (Doc. 7-8, p. 27). Ms.
Kinsley testified that she depends on her daughter to help with sweeping and

---

[3] Ms. Kinsley's functional report states that she prepares food "at least 1 time a day, have to put something in there to live." (Doc. 7-8, p. 27).

mopping. (Doc. 7-3, p. 70). In response to the application question "[w]hat were you able to do before your . . . conditions that you can't do now?" Ms. Kinsley listed "keep my home as clean as I want it to be." (Doc. 7-8, p. 26). Ms. Kinsley drives and buys food for herself and her dogs, but she does so only once a month, and the task usually takes two hours. (Doc. 7-8, p. 28).

Ms. Kinsley testified that she cannot take her clothes off without pain. (Doc. 7-8, p. 26). Moreover, Ms. Kinsley stated that, although she can perform personal care activities such as combing her hair, she must do so "[v]ery carefully, very slowly" because "[i]t takes a lot longer." (Doc. 7-3, p. 69). Ms. Kinsley states that she can only lift her dining room chair "a little bit" before she has to "sit back down and scoot it." (Doc. 7-3, pp. 67-88). In contrast, the ALJ ignores the limitations included in Ms. Kinsley's testimony and simply states that she can "lift a dining room chair." (Doc. 7-3, p. 20).

The ALJ's description of Ms. Kinsley's hobbies does not reflect how thoroughly back pain has affected Ms. Kinsley's enjoyment of those activities. The ALJ asserted that Ms. Kinsley enjoys knitting; Ms. Kinsley's functional report twice notes that she no longer can knit. (Doc. 7-8, p. 29). While Ms. Kinsley enjoys coloring and assembling puzzles, she says she needs frequent breaks because sitting still for long periods of time causes her back to hurt. (Doc. 7-8, p. 29). Ms. Kinsley's medical records corroborate this testimony. They confirm that

her back pain is aggravated by "standing or sitting more than 10 minutes" and even "a change in position." (Doc. 7-4, p. 12; Doc. 7-9, p. 47). Ms. Kinsley also reported that her back pain interferes with her ability to concentrate when reading her Bible. (Doc. 7-3, p. 70). When walking outside, she uses a cane for assistance. (Doc. 7-8, p. 28).[4]

When the full extent of Ms. Kingsley's limitations are considered, her daily activities do not appear inconsistent with the experiences of a person who "wake[s] up in pain and sit[s] in pain and go[es] to bed in pain." (Doc. 7-8, p. 25). The manner in which the ALJ described Ms. Kinsley's activities bears little resemblance to Ms. Kinsley's own description. *See Bosarge v. Berryhill*, No. CA 16-0382-C, 2017 WL 1011671, at *7 n.6 (S.D. Ala. Mar. 15, 2017) (faulting an ALJ for "describ[ing] Plaintiff's daily activities in a manner which would lead the reader to believe that she performed them without any limitation"). Therefore, the ALJ's reliance on Ms. Kinsley's daily activities to discredit her testimony is not supported by substantial evidence. *See Horton v. Barnhart* 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006). ("The ALJ's selective description of the Plaintiff's

---

[4] The ALJ notes that Ms. Kinsley's cane is not prescribed. (Doc. 7-3, p. 22). The lack of a prescription does not necessarily indicate that a claimant does not require such a device. *See Davis v. Berryhill*, No. 2:15-CV-1429-KOB, 2017 WL 1074451, at *9 (N.D. Ala. Mar. 20, 2017) ("The ALJ must always consider the particular facts of a case when determining the need for a hand-held device. Notably absent from this standard is any requirement for a prescription.") (internal quotations and citations omitted).

activities is disingenuous, as he accepts her listing of her activities, but not her limiting description of them.").[5]

## V.    CONCLUSION

For the reasons discussed above, the Court remands the decision of the Commissioner for further administrative proceedings consistent with the Court's memorandum opinion.

**DONE** this 14th day of September, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[5] The ALJ also questioned Ms. Kinsley's assertion that she has difficulty using her right hand. (Doc. 7-3, p. 22). The ALJ stated that Ms. Kinsley's activities of daily living are "inconsistent with not being able to use both hands." (Doc. 7-3, p. 22). The ALJ appears to be overlooking Ms. Kinsley's repeated references to the difficulty she has using her left hand for feeding, bathing, and shaving. (Doc. 7-8, p. 26). The ALJ questioned the credibility of Ms. Kinsley's claims, stating that the acts of changing a lightbulb and cleaning the house "would be difficult to do without using both hands." (Doc. 7-3, p. 22). The record indicates that these activities were difficult for Ms. Kinsley to accomplish. The record contains no references to her successfully changing a lightbulb; the record indicates only that she fell and was admitted to the emergency room when she attempted to do so. (Doc. 7-9, p. 28). Likewise, on one occasion Ms. Kinsley's attempt to clean her house aggravated her back pain so much that she had to go to the emergency room. (Doc. 7-9, p. 76).